UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL MCPIKE,<br><br>               Plaintiff,<br><br>     v.<br><br>THE UNITED STATES FEDERAL BUREAU OF INVESTIGATION,<br><br>               Defendant. | No.  2:14-cv-01682-TLN-KJN PS<br><br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Plaintiff Paul McPike, who is proceeding without counsel in this action, filed his complaint and an application to proceed in forma pauperis on July 16, 2014.[1]  (ECF Nos. 1, 2.) For the reasons stated below, the court grants plaintiff's application to proceed in forma pauperis, but recommends that the complaint be dismissed with prejudice.

    I.    <u>Plaintiff's Application to Proceed in Forma Pauperis</u>

Plaintiff requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. Plaintiff's application and declaration make the showing required by 28 U.S.C. § 1915(a)(1). Accordingly, the court grants plaintiff's request to proceed in forma pauperis.

////

////

---

[1] This action proceeds before the undersigned pursuant to Eastern District of California Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1).

II.     Screening Plaintiff's Complaint

    A.     *General Screening Standards*

The determination that a plaintiff may proceed in forma pauperis does not complete the required inquiry. Pursuant to 28 U.S.C. § 1915(e)(2), the court is directed to dismiss a case filed pursuant to the in forma pauperis statute if, at any time, it determines that the allegation of poverty is untrue, the action is frivolous or malicious, the complaint fails to state a claim on which relief may be granted, or the action seeks monetary relief against an immune defendant.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989); Franklin, 745 F.2d at 1227.

In assessing whether a plaintiff's complaint fails to state a claim on which relief can be granted, the court adheres to "notice pleading" standards. See, e.g., Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009). The notice pleading standards are codified, in part, in Federal Rule of Civil Procedure 8(a), which provides:

> (a) Claim for Relief. A pleading that states a claim for relief must contain:
>
> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

However, a complaint must contain more than "naked assertions," "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). In other words, "[t]hreadbare recitals of the elements of

1  a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal,
2  556 U.S. 662, 678 (2009).  Furthermore, a claim upon which the court can grant relief must have
3  facial plausibility.  Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff
4  pleads factual content that allows the court to draw the reasonable inference that the defendant is
5  liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  When considering whether a
6  complaint states a claim upon which relief can be granted, the court must accept the allegations as
7  true, Erickson v. Pardus, 551 U.S. 89, 93-94 (2007), and construe the complaint in the light most
8  favorable to the plaintiff, see Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).
9      Pro se pleadings are construed liberally.  See Haines v. Kerner, 404 U.S. 519, 520-21
10 (1972); Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).  Unless it is clear
11 that no amendment can cure the defects of a complaint, a pro se plaintiff proceeding in forma
12 pauperis is entitled to notice and an opportunity to amend the complaint before dismissal.  See
13 Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987); Franklin, 745 F.2d at 1230.
14          B.     *Plaintiff's Allegations*
15     Plaintiff makes the following allegations in his complaint.  Plaintiff alleges that, over the
16 past twelve years, the United States Federal Bureau of Investigation ("FBI") has spread false
17 rumors that plaintiff is a "child molester," and has harassed him, and encouraged others to harass
18 him, with similar insults.  (Compl. at 1-3.)  Plaintiff alleges several examples.
19     Plaintiff alleges that in January 2007, while returning to California from Cancun, Mexico,
20 FBI agents followed him "saying nasty things" and "calling [him] a wanted pervert" as he
21 "passed by them at the airport, train and bus stations."  (Compl. at 1-2.)
22     Plaintiff alleges that FBI agents followed him "around town on [his] errands telling
23 everyone [he] came in contact with that [he was] to be harassed and called a child molester to
24 other people whenever they see [him]."  (Compl. at 2.)
25     Plaintiff alleges that he then moved to Sacramento, California, in an attempt to escape the
26 harassment.  (Id.)  Plaintiff alleges that, while there, an FBI agent entered his "apartment's office
27 with a manila file in her hand," and that "[t]he next day people in the office called [him] a child
28 molester as [he] walked by."  (Id.)  Plaintiff alleges that his neighbors began harassing him, "even

firing small caliber bullets into the ground outside [his] window." (Id.)

Plaintiff alleges that he eventually became homeless in Monterey, California, in his attempt to flee the "child molester" accusations. (Id.) Plaintiff alleges that, "[a]fter a few weeks of being treated normal by the other homeless people, well-dressed FBI agents came to the Salvation Army's free food spot and told the other homeless people that [he was] a child molester and should be harassed." (Id.)

Plaintiff alleges that "[i]n the spring of 2012 [he] was forced into the El Dorado County mental hospital in Placerville, California when FBI agents immediately showed up and played their game." (Id.) Plaintiff alleges that the entire hospital harassed him as a "child molester." (Id.) Plaintiff alleges that, as a result of the abuse, he attacked another patient, leading to his imprisonment. (Id.) Plaintiff alleges that, in jail, "the FBI told the same lies to an officer called Gilmer." (Id.) Plaintiff alleges that Officer Gilmer then told the food servers, who consequently contaminated his food. (Id.)

Plaintiff alleges that "just before Thanksgiving, 2013, [he] witnessed an FBI agent show his badge to a bus driver and tell him that he and all other bus drivers must tell passengers that [he is] a child molester whenever [he] ride[s] public transit." (Compl. at 3.)

Plaintiff alleges that he is currently homeless due to the FBI's "abuses of powers." (Id.) Plaintiff alleges that the FBI told his neighbors to harass him by "calling [him] names and threatening [him] with thumps through [his] walls and ceiling." (Id.) Plaintiff alleges that he can no longer rent any residence because his "neighbors always obey the FBI and turn on [him]." (Id.)

Plaintiff alleges that he is disabled with Schizoaffective Disorder, for which he must take anti-psychotic medication, making the abuse worse. (Id.) Plaintiff alleges that the "FBI is actually preying upon [his] disability to continually harm the way [he] feel[s], every day." (Id.)

Plaintiff believes that the reason he is being harassed by the FBI is because of "secret information" that he knows. (Id.) Plaintiff claims that, after World War II, "[a] group of Nazis" fled to Utah with "a trunk full of evil knowledge," where they befriended "the Mormons." (Compl. at 6.) Plaintiff alleges that "the Mormons" incorporated the Nazi's "evil experiments,"

and began holding "secret ceremonies inside their temples" where they sacrifice humans.  (Id.)

Plaintiff goes on to claim that, in 1992, George W. Bush visited his high school senior class where, together, they planned the attacks of September 11, 2001.  (Compl. at 7.)  Plaintiff alleges that he was hypnotized to forget the entire semester of high school when this occurred, but attempted to remind himself to prevent the attacks by composing "rock n roll albums."  (Id.)

Plaintiff requests $25 million in damages as relief.  (Compl. at 3.)

Construing the allegations in the complaint liberally, it appears that plaintiff attempts to assert the following claims: (1) violation of the Americans with Disabilities Act ("ADA"); (2) violation of the equal protection component of the Fifth Amendment; (3) defamation; and (4) intentional infliction of emotional distress.

    C.  *Plaintiff's Claims*

      1.  **Violation of the ADA**

To establish a prima facie case under the ADA, a plaintiff must show that (1) he or she is disabled; (2) he or she is qualified to participate in or receive the benefit of a public entity's services, programs, or activities; (3) he or she was excluded from such participation or denied such benefit; and (4) such exclusion or denial was due to his or her disability.  Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002); 42 U.S.C. § 12132.  The ADA applies to public entities, which are defined as "any State or local government"; "any department, agency, special purpose district, or other instrumentality of a State or States or local government"; and "the National Railroad Passenger Corporation."  42 U.S.C. § 12131(1).

Here, plaintiff has named the FBI as a defendant.  However, the definition of "public entity" does not include the FBI, or any federal agency.  See 42 U.S.C. § 12131.  Thus, the ADA does not apply to the FBI or its agents.  Accordingly, the court cannot grant relief under the ADA because plaintiff has failed to name a defendant that is potentially liable for violation of the ADA.

In addition, plaintiff has failed to allege that his disability was the reason for the FBI's discrimination.  Plaintiff alleges that he is disabled due to his Schizoaffective Disorder.  (Compl. at 3.)  However, plaintiff does not allege that the FBI is harassing him *because of* his disorder.  Instead, plaintiff alleges that his disability simply exacerbates the effects of the FBI's abuse.  (See

5

id.)  Thus, the complaint also fails to allege sufficient facts to plausibly support each element of a claim under the ADA.

2.      **Violation of the Fifth Amendment**

A plaintiff can sue a federal agent if that agent violates the plaintiff's rights under the equal protection component of the Fifth Amendment.  Davis v. Passman, 442 U.S. 228, 243-44 (1979); see also Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 389 (1971) (establishing Bivens claim allowing plaintiffs to sue federal agents for constitutional violations).  Such a Bivens claim "can be maintained against a defendant in his or her individual capacity only, and not in his or her official capacity." Daly-Murphy v. Winston, 837 F.2d 348, 355 (9th Cir. 1988).  However, vicarious liability does not apply to Bivens claims, requiring the plaintiff to allege that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 675.  A plaintiff cannot bring a Bivens claim directly against a federal agency; only the individual federal agents that committed the alleged violation.  FDIC v. Meyer, 510 U.S. 471, 473, 486 (1994).

The United States Supreme Court has held that the Due Process Clause of the Fifth Amendment prohibits the federal government from denying equal protection of the laws.  Bolling v. Sharpe, 347 U.S. 497, 498-99 (1954); Davis, 442 U.S. at 234.  The Supreme Court's "approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment." Weinberger v. Wiesenfeld, 420 U.S. 636, 638 n.2 (1975). Equal protection is violated when decision-makers undertake a course of action because of, not merely in spite of, the adverse effects upon an identifiable group.  Iqbal, 556 U.S. at 676-77; McCleskey v. Kemp, 481 U.S. 279, 292-300 (1987).  To sufficiently allege an equal protection claim, "a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).

When governmental actions are challenged, the level of scrutiny under which the action is reviewed depends upon the class of persons affected by the decision.  See, e.g., United States v. Virginia, 518 U.S. 515, 533 (1996) (gender-based classifications must serve important

1 governmental objectives, and the discriminatory means employed to serve those objectives must
2 be substantially related); Heller v. Doe, 509 U.S. 312, 319-20 (1993) (classifications that do not
3 involve fundamental rights nor proceed along suspect lines do not run afoul of equal protection if
4 there is a rational relationship between the disparity of treatment and some legitimate
5 governmental purpose); Grutter v. Bollinger, 539 U.S. 306, 326 (2003) (all racial classifications
6 are subject to strict scrutiny).  Classification based on disability is not subject to heightened
7 review; such classification is valid if there is a rational basis for it.  Nev. Dep't of Human Res. v.
8 Hibbs, 538 U.S. 721, 735 (2003).

9      A Bivens claim can be brought against a federal agent in his or her individual capacity.
10 Daly-Murphy, 837 F.2d at 355.  However, plaintiff has named as defendant the FBI as an agency,
11 rather than the unidentified individual agents that allegedly harassed him.  The United States
12 Supreme Court has held that a Bivens claim cannot be brought directly against a federal agency.
13 Meyer, 510 U.S. at 486.  Thus, the court cannot grant relief under the Fifth Amendment as
14 plaintiff has failed to name a defendant who can be sued under a Bivens claim.

15      In addition, plaintiff's allegations are insufficient to show discriminatory purpose.  As
16 discussed above, plaintiff alleges that he has a disability, but does not allege that the FBI is
17 abusing him *because of* that disability; only that his disability exacerbates the abuse.  (See Compl.
18 at 3.)  Therefore, plaintiff fails to state a claim for violation of his rights under the Fifth
19 Amendment.

20                     3.   **Defamation**

21      Defamation includes both libel and slander.  Cal. Civ. Code § 44.  California law defines
22 libel as "a false and unprivileged publication by writing, printing, picture, effigy, or other fixed
23 representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or
24 which causes him to be shunned or avoided, or which has a tendency to injure him in his
25 occupation."  Id. § 45.  Slander is defined as "a false and unprivileged publication, orally uttered,
26 and also communications by radio or any mechanical or other means which: (1) Charges a person
27 with crime, or with having been indicted, convicted, or punished for crime; . . . (4) Imputes to him
28 impotence or a want of chastity; or (5) Which, by natural consequence, causes actual damage."

1  Id. § 46.

2  However, under the doctrine of sovereign immunity, the United States, including its
3  federal agencies, cannot be sued without its consent. United States v. Mitchell, 463 U.S. 206, 212
4  (1983). The Federal Tort Claims Act ("FTCA") generally authorizes suits against the United
5  States for damages for:

> injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

10  28 U.S.C. § 1346(b)(1). However, this waiver applies only to the United States. FDIC v. Craft,
11  157 F.3d 697, 706 (9th Cir. 1998). A federal agency, on the other hand, retains sovereign
12  immunity, unless Congress explicitly revokes it. City of Whittier v. U.S. Dep't of Justice, 598
13  F.2d 561, 562 (9th Cir. 1979).

14  Plaintiff named the FBI as a defendant, but not the United States. Thus, the FTCA does
15  not provide jurisdiction for these claims. Congress has not otherwise waived the FBI's immunity
16  against claims for monetary damages. Gerritsen v. Consulado Gen. de Mexico, 989 F.2d 340,
17  343 (9th Cir. 2003) ("[t]he FBI is a federal agency and . . . Congress has not revoked its
18  immunity."). Thus, the FBI remains immune to plaintiff's claims of libel and slander, and cannot
19  be sued. Moreover, even if the United States were named as a defendant, the FTCA would still
20  not allow for plaintiff's claims. The FTCA does not waive sovereign immunity for any claim
21  arising out of libel or slander. 28 U.S.C. § 2680(h).

22  In addition, regarding the claim of libel, plaintiff fails to allege that any of the FBI's
23  statements were ever published. Plaintiff alleges that "a female FBI agent" entered his apartment
24  complex with a manila file, and that, the next day, people called him a "child molester." (Compl.
25  at 2.) This could imply that there was some document in the file that accused plaintiff of being a
26  "child molester." However, without more clarity on what exactly was contained in the file, this
27  alone is too speculative to show that a libelous statement was published. Since there is no other
28  allegation of publication, the complaint does not state a claim for libel.

8

1              4.      **Intentional Infliction of Emotional Distress**

2       Under California law, a claim for intentional infliction of emotional distress requires (1) extreme and outrageous conduct (2) with the intent of causing, or reckless disregard of the probability of causing, (3) severe or extreme emotional distress, and (4) actual and proximate causation.  Davidson v. City of Westminster, 32 Cal. 3d 197, 209 (1982).

6       Similar to his defamation claim, plaintiff fails to state a claim for intentional infliction of emotional distress because the FBI is immune from liability for such a claim.  See Gerritsen, 989 F.2d at 343.  Because plaintiff has not named the United States as a defendant, the FTCA does not apply.  Further, Congress has not waived the FBI's sovereign immunity against claims for monetary damages.  Accordingly, the FBI is immune to plaintiff's claim for intentional infliction of emotional distress.

12      III.    Conclusion

13      In sum, the court finds that the FBI is either an improper defendant or entitled to sovereign immunity as to all of plaintiff's potential claims, and, therefore, cannot be held liable, regardless of how well-pled plaintiff's claims may be.  Although the court would ordinarily grant a pro se plaintiff leave to amend, the bar of sovereign immunity as to plaintiff's state-law claims and the fact that the FBI is not a proper defendant with respect to plaintiff's claims under federal law cannot be overcome by further revision of plaintiff's allegations.  As such, granting leave to amend would be futile.  See Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 339 (9th Cir. 1996).

20      Accordingly, for the foregoing reasons, IT IS HEREBY ORDERED that plaintiff's motion to proceed in forma pauperis (ECF No. 2) is GRANTED.

22      IT IS ALSO HEREBY RECOMMENDED that:

23      1.  The action be DISMISSED WITH PREJUDICE.

24      2.  The Clerk of Court be directed to close this case and vacate all dates.

25      These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO ORDERED AND RECOMMENDED.

Dated:  October 17, 2014

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE